RENDERED:  FEBRUARY 10, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0325-MR

SCOTTY HALSEY AND
KIMBERLY HALSEY                                                                APPELLANTS

v.
APPEAL FROM MENIFEE CIRCUIT COURT
HONORABLE WILLIAM EVANS LANE, JUDGE
ACTION NO. 17-CI-90066

HOLBROOK IMPLEMENT CO., LLC                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Scotty Halsey and Kimberly Halsey (collectively referred to as the Halseys) bring this appeal from a December 18, 2019, order and a February 5, 2020, order of the Menifee Circuit Court dismissing by summary judgment their claims against Holbrook Implement Company, LLC (Holbrook Implement).  We affirm.

## Background

On July 25, 2015, the Halseys purchased a Massey Ferguson tractor from Holbrook Implement. At the time of the purchase, the Halseys and Ted Holbrook (owner of Holbrook Implement) executed a Retail Installment Contract and Security Agreement (Retail Contract). Two days later, on July 27, 2015, Scotty was operating the tractor at his farm when the tractor rolled over causing Scotty to suffer serious physical injuries.

As a result, on July 31, 2017, the Halseys filed a complaint in the Menifee Circuit Court against Holbrook Implement. Therein, the Halseys alleged:

> 7. The AGCO Corporation ("AGCO") tractor and/or Titan Tire Corporation ("Titan") tire, which are the subject of this action, were marketed, sold and distributed by Defendant Holbrook.
>
> 8. On or about July 25, 2015, Mr. Halsey purchased an AGCO tractor with Titan tires from Defendant Holbrook.
>
> 9. On or about July 27, 2015, Mr. Halsey attempted use of and did use the AGCO tractor and/or Titan tire in a safe manner and was using the AGCO tractor and/or Titan tire in the manner in which they were intended to be used.
>
> 10. Defendant marketed, sold and distributed the AGCO tractor and/or Titan tire in a defective condition and unreasonably dangerous for their intended or expected use, and it posed a risk of serious harm to Mr. Halsey and others.

11. Defendant failed to warn Mr. Halsey about the AGCO tractor and/or Titan tire's defective and unreasonably dangerous condition.

12. The AGCO tractor and/or Titan tire failed.

13. Specifically, the Titan tire rim bent and caused the tire to separate from it only two days after the AGCO tractor's purchase, which caused the tractor to rollover during operation by Mr. Halsey.

14. Mr. Halsey purchased an AGCO Massey Ferguson ("MF") 4608.

15. The AGCO MF 4608 comes equipped with Titan 9.5-24 6 ply R1 tires on the front.

16. These tires have a maximum load capacity of 1,870 lbs. See http://www.titanstore.com/info/48D694.

17. The MF 4600 Operator's Manual fails to include this information.

18. The MF 4600 Operator's Manual does indicate that the maximum weight capacity for the front axle is 7,496 lbs., or 3,748 lbs. per tire. See MF 4600 Operator's Manual, p. 218.

19. The model Mr. Halsey purchased weighs 6,944 lbs. See MF 4600 Operator's Manual, p. 223.

20. He also purchased a MF 900X Loader Model 921. It weighs 961 lbs. See http://www.used-massey-tractors.com/brochures/show/brochure/52/bname/massey-ferguson-900-series-loaders-brochure.

21. Mr. Halsey estimates the roll of hay he hauled at the time of the rollover (4.5 ft. x 5 ft.) at 1,200 lbs.

22. At the time of the rollover, Mr. Halsey's 4608 carried approximately 2,276.25 lbs. per tire ((6,944 + 961 + 1,200) / 4)), or 406.25 lbs. (21.7%) overloaded beyond each tire's capacity.

23. The stated maximum weight capacity for the front axle more than doubles the maximum load capacity of the tires the 4608 comes equipped with by the MF 4600 Operator's Manual's own admission.

24. The Titan tires the 4608 come[s] equipped with are underrated and inadequate for the loads typically carried by them as evidenced by Mr. Halsey's rollover.

25. As a direct and proximate result of Defendant's failures and the failure of the AGCO tractor and/or Titan tire, Mr. Halsey sustained injuries resulting in multiple harms and losses.

. . . .


## COUNT I

### Breach of Express Warranties

. . . .

31. Defendant, acting by and through its agents, servants and employees, knew or should have reasonably known of the particular purpose for which their AGCO tractor and/or Titan tires would be used, including the safe farming of land.

32. At all times herein mentioned, Defendant expressly warranted to consumers, including Mr. Halsey, by and through statements made by Defendant or its principals, authorized agents, sales representatives or retailers, orally and in publications and other written materials intended for consumers and the general public,

that the AGCO tractor and/or Titan tire was safe and fit for the particular purpose and use for which it was intended, and the uses that were reasonably foreseeable.

33. Defendant specifically expressly warranted to the general public, and Mr. Halsey in particular, that the AGCO tractor and/or Titan tire were designed, constructed, manufactured, assembled and inspected in such a manner as to be free from defects and reasonably fit for purposes and use for which it was intended, and the uses that were reasonably foreseeable.

34. In acquiring the AGCO tractor and/or Titan tire, Mr. Halsey reasonably relied on the skill, judgment, representations and foregoing express warranties of Defendant.

35. The warranties and representations were false in that the AGCO tractor and/or Titan tire were not safe and were unfit for the uses for which they were intended, and the uses that were reasonably foreseeable.

36. Contrary to the express warranties, Defendant designed, constructed, manufactured, assembled, inspected and placed on the market and into the stream of commerce the AGCO tractor and/or Titan tire in a defective and unsafe condition.

37. Defendant breached its express warranties.

38. As a direct and proximate result of Defendant's breach of warranty and the failure of the AGCO tractor and/or Titan tire, Mr. Halsey sustained injuries resulting in multiple harms and losses.

. . . .

## COUNT II

## Breach of Implied Warranties of Merchantability and Fitness for Particular Purpose

. . . .

42.     Prior to the time that Mr. Halsey acquired and used the AGCO tractor and/or Titan tire, Defendant knew, or had reason to know, of the use to which the products would be put and impliedly warranted to Mr. Halsey that they were safe and fit for both the ordinary and particular purposes for which they were used and/or required.

43.     Defendant knew, or had reason to know, that Mr. Halsey would rely on its judgment and skill in providing AGCO tractor and/or Titan tires for their particular purpose.

44.     Mr. Halsey reasonably relied entirely on the skill, judgment and implied warranties of Defendant in purchasing and using the AGCO tractor and/or Titan tire.

45.     The AGCO tractor and/or Titan tire were neither safe or fit for their particular purpose required, nor safe or fit for the ordinary purpose for which they were used, as warranted by Defendant, in that they had dangerous propensities when put to the intended use and could cause severe injuries to the user.

46.     Defendant breached its implied warranties.

47.     As a direct and proximate result of Defendant's breach of warranty and the failure of the AGCO tractor and/or Titan tire, Mr. Halsey sustained injuries resulting in multiple harms and losses.

July 31, 2017, Complaint at 2-7.  Kimberly also claimed loss of consortium as a

result of Scotty's injuries.

Holbrook Implement filed an Answer and, thereafter, filed a Motion for Summary Judgment. In the motion, Holbrook Implement argued that the Halseys waived various warranties including the implied warranty of merchantability, the implied warranty of fitness for a particular purpose, and any express warranty in the Retail Contract. Additionally, Holbrook Implement maintained that the Retail Contract provided for a thirteen-month limitation period to file claims based upon either breach of express or implied warranties. Holbrook Implement pointed out that the Retail Contract specifically provided that the thirteen-month limitation period was triggered by delivery of the tractor. Holbrook Implement maintained that the thirteen-month limitation period expired before the Halseys filed the complaint.

In response, the Halseys argued that the Retail Contract was fully assigned by Holbrook Implement to AGCO Finance LLC (AGCO Finance); therefore, Holbrook Implement could not rely upon the terms of the Retail Contract.

By order entered December 18, 2019, the circuit court rendered summary judgment. Therein, the circuit court concluded:

> According to the record before the Court there is not a completed assignment and that the contract, which has not been attacked substantively by the [P]laintiffs, continues to protect the seller and assignee and binds the Plaintiffs to their obligations and particularly a 13 month time limitation for suit to commence. Secondly the

Plaintiffs argue that Ms. Halsey's claim is entitled to a five-year statute of limitations for actions created by statute. The Kentucky Supreme Court has clearly made consortium claims subject to a one-year statute of limitations by [Kentucky Revised Statutes] KRS 413.140(a). *Floyd v. Gray*, 657 S.W.2d 936 (Ky. 1983). This would be regardless of the contract which arguably would have extended the limitations period by one month.

The Court finds that all claims are at least subject to a 13 month claim limitation period and the Defendant's Motion for Summary Judgment is granted and all claims are dismissed as time limited.

Order at 2.

The Halseys then filed a Motion to Vacate the December 18, 2019, order. The Halseys pointed out that they received a letter dated July 31, 2015, from AGCO Finance and were informed that the Retail Contract had been assigned to AGCO Finance. The Halseys attached the letter to their motion. The Halseys argued that the letter demonstrated that the Retail Contract was, in fact, assigned to AGCO Finance and that Holbrook Implement assigned all its "rights, title, and interest in and to" the Retail Contract to AGCO Finance. As a result, the Halseys asserted that Holbrook Implement could not rely upon the terms of the Retail Contract, including the thirteen-month limitation period. The Halseys later filed a copy of the Retail Contract, which was signed by an AGCO Finance's representative on July 30, 2015, accepting the assignment by Holbrook Implement.

By order entered February 5, 2020, the circuit court denied the Halseys' motion to vacate. Nonetheless, the circuit court noted that "[t]he assignment was not completed on the date of the accident thus under that argument the Summary Judgment stands." Order at 2. This appeal follows.[1]

## Standard of Review

To begin, summary judgment is proper where there exists no genuine issue as to any material fact and movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991); Kentucky Rules of Civil Procedure (CR) 56.03. All facts and inferences therefrom are to be viewed in a light most favorable to the nonmoving party. *Steelvest, Inc.*, 807 S.W.2d 476. If there are no factual issues, summary judgment looks only to questions of law and our review thereon is *de novo*. *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010). Our review proceeds accordingly.

## Analysis

The Halseys contend that the circuit court erroneously rendered summary judgment dismissing their breach of warranty claims as time-barred

---

[1] By Order entered August 28, 2020, this Court instructed Scotty Halsey and Kimberly Halsey (collectively referred to as the Halseys) to demonstrate in their appellants' brief how complete relief can be obtained in this appeal in the absence of Titan Tire Corporation as a party thereto. Titan Tire manufactured the tires equipped on the Halseys' tractor. Upon review of the parties' briefs and circuit court record, we do not believe that Titan Tire Corporation is an indispensable party.

under the thirteen-month limitation period found in the Retail Contract.

Specifically, the Halseys point out that under Kentucky's Uniform Commercial

Code (KRS 355.2-210), the rights of a seller or buyer may be fully assigned by

agreement. The Halseys maintain that Holbrook Implement, as seller of the

tractor, assigned to AGCO Finance all of its rights under the Retail Contract. The

Halseys assert that AGCO Finance undisputedly accepted the assignment, and as a

result, Holbrook Implement may not rely upon the terms of the Retail Contract, as

to waiver of warranties and the limitation period of thirteen months.

The relevant Uniform Commercial Code (U.C.C.) provisions are

found in KRS 355.2-210 and KRS 355.2-725. KRS 355.2-210 reads, in pertinent

part:

> (2) Except as otherwise provided in KRS 355.9-406,
> unless otherwise agreed, all rights of either seller or
> buyer can be assigned except where the assignment
> would materially change the duty of the other party,
> or increase materially the burden or risk imposed on
> him by his contract, or impair materially his chance of
> obtaining return performance. A right to damages for
> breach of the whole contract or a right arising out of
> the assignor's due performance of his entire obligation
> can be assigned despite agreement otherwise.
>
> . . . .
>
> (5) An assignment of "the contract" or of "all my rights
> under the contract" or an assignment in similar
> general terms is an assignment of rights and unless the
> language or the circumstances (as in an assignment
> for security) indicate the contrary, it is a delegation of

performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract.

KRS 355.2-725 provides, in relevant part:

> (1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Under KRS 355.2-210(2) and (5), a seller or buyer may generally assign a contract or all rights under the contract, and upon acceptance by the assignee, the assignee is to perform the duties of the assignor. And, pursuant to KRS 355.2-725, the statutory four-year limitation period for breach of a sale's contract may be shortened to not less than one year by the parties' agreement.

> In this case, the material provisions of the Retail Contract read:

> Following assignment of this Contract, all references to "Seller" in this Contract shall be deemed references to "Assignee." Buyer acknowledges that Seller is not the agent of Assignee, that any representations or warranties made by Seller are not binding on Assignee, and that

-11-

Seller does not have the authority to modify any term or provision of this Contract subsequent to assignment of this Contract by Seller.

. . . .

Disclaimer of Warranties (Except Residents of Kansas): BUYER AGREES TO ACCEPT THE MACHINERY IN ITS AS IS, WHERE IS CONDITION WHEN DELIVERED AND ACKNOWLEDGES THAT NO WARRANTY, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IS PROVIDED BY SELLER OR ASSIGNEE TO BE APPLICABLE TO THIS CONTRACT OR THE MACHINERY, ANY ACTION FOR BREACH OF WARRANTY MUST BE COMMENCED WITHIN THIRTEEN (13) MONTHS FOLLOWING DELIVERY.

. . . .

For value received, the Seller hereby sells, assigns, and transfers to AGCO Finance LLC (Assignee) all of the Seller's right, title and interest in and to the within Contract and all rights thereunder, together with all the Seller's right, title and interest in and to the property therein described, subject to the terms accepted by the Assignee only at its office in Johnston, Iowa.

Retail Contract at 1-3.

The material terms of the Retail Contract are clear and unambiguous.[2]

Thereunder, Holbrook Implement (Seller) agreed to assign all its rights under the

---

[2] It is well settled that an unambiguous contract will be enforced according to its terms. *Smithfield Farms, LLC v. Riverside Developers, LLC*, 566 S.W.3d 566, 570 (Ky. App. 2018).

-12-

Retail Contract to AGCO Finance. However, the Retail Contract clearly sets forth that such assignment was only effectuated upon the acceptance of same by AGCO Finance at its office in Johnston, Iowa.

The undisputed facts indicate that AGCO Finance accepted the assignment under the Retail Contract on July 30, 2015, some three days after the tractor accident on July 27, 2015. At the time of the accident and after delivery of the tractor to the Halseys, the assignment of Holbrook Implement's rights under the Retail Contract to AGCO Finance had not yet taken place.

Under KRS 355.2-725(2), an action for breach of warranty accrues when tender of delivery is made; likewise, under the Retail Contract, an action for breach of warranty accrues when the machinery was delivered. So, under both KRS 355.2-725(2) and the Retail Contract, the Halseys' action for breach of express or implied warranties accrued at the time the tractor was delivered. And, it is uncontroverted that at the time the tractor was delivered to the Halseys, the assignment of Holbrook Implement's rights under the Retail Contract to AGCO Finance had not yet taken place. Thus, the Retail Contract is applicable.

As previously pointed out, the Halseys purchased the tractor on July 25, 2015, and the accident took place on July 27, 2015. The Halseys filed the complaint alleging breach of express and implied warranties against Holbrook Implement on July 31, 2017. Under the Retail Contract, the Halseys had thirteen

months from the date of delivery of the tractor to commence an action for breach of express and/or implied warranties. However, the Halseys filed their complaint some twenty-four months after the accident and delivery of the tractor. As a result, we conclude that the Halseys' action for breach of express and implied warranties was time-barred under the thirteen-month limitation period found in the Retail Contract.

The Halseys next maintain that the express and implied warranties disclaimer and shortened limitations period found in the Retail Contract are inconspicuous and unenforceable.[3] The Halseys cite to KRS 355.1-201(2)(j), which provides the definition of "conspicuous." The Halseys argue that the warranty disclaimer in the Retail Contract lacks a heading of all capital letters and of contrasting type, font, or colors. The Halseys also maintain that the warranty disclaimer appears on a page with other provisions in fine print and on single-spaced lines.

We initially note that this issue was not brought before the circuit court. We generally only review issues that are presented to and decided by the circuit court. *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).

---

[3] The Halseys initially argue that the limitation provision found in the Retail Contract was not conspicuous and thus invalid. However, their argument thereafter centers upon the warranty disclaimer, and as an appellate court, it is not our function to construct and articulate a party's arguments on appeal. Nonetheless, we perceive no merit in this argument.

Nonetheless, we conclude that the warranty disclaimer found in the Retail Contract

is conspicuous within the meaning of KRS 355.2-316 and enforceable.

Under the U.C.C., KRS 355.2-316(2) and (3) provide:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade; and

(d) with respect to the sale of bovine, porcine, ovine, and equine animals, or poultry there shall be no implied warranty that the animals are free from

disease or sickness. This exemption shall not apply when the seller knowingly sells animals which are diseased or sick.

And, the definition of "conspicuous" is found in KRS 355.1-201, which provides:

(2) Subject to definitions contained in other articles of the Uniform Commercial Code that apply to particular articles or parts thereof:

. . . .

(j) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

1. A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

2. Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language[.]

In the Retail Contract, the warranty exclusion is found on page two and appears in capital letters. It states that sellers agree that no warranty, express or implied, covers the machinery. In particular, the warranty exclusion mentions the implied warranty of merchantability and implied warranty of fitness for a

-16-

particular purpose. Additionally, the Retail Contract states in all capital letters that the machinery is sold "as is." Taken together, we hold that a reasonable person would have noticed the warranty disclaimer in the Retail Contract; therefore, the warranty disclaimer is conspicuous under KRS 355.1-201(2)(j) and valid per KRS 355.2-316.

We view the Halseys' remaining contentions of error as moot.

In sum, we are of the opinion that the circuit court properly rendered summary judgment dismissing the Halseys' claims against Holbrook Implement.

For the foregoing reasons, the December 18, 2019, order and February 5, 2020, order of the Menifee Circuit Court are affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE: |
|---|---|
| William D. Nefzger<br>Louisville, Kentucky | Kenneth L. Finley<br>Anthony M. Pernice<br>Lexington, Kentucky |